## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

INFINITY LABORATORY GROUP INC.,    )
    )
    Plaintiff,    )
    )
    v.    )    C.A. No. 22-588-RGA-JLH
    )
RUSSELL ODEGARD and MICHAEL    )
PRUETT,    )
    )
    Defendants.    )
    )

## REPORT AND RECOMMENDATION

Defendants Russell Odegard and Michael Pruett ("Defendants") move to dismiss Count II of Plaintiff Infinity Laboratory Group Inc.'s ("Plaintiff's) Complaint for failure to state a claim. (D.I. 8.)  Judge Andrews referred the motion to me on July 15, 2022.  (D.I. 13.)  The motion is fully briefed (D.I. 9, 11, 12, 16), and I heard oral argument on November 29, 2022.  For the reasons announced from the bench at the conclusion of the hearing, I recommend that the motion be DENIED.

### I.    LEGAL STANDARDS

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  In determining the sufficiency of the complaint under the plausibility standard, all "well-pleaded facts" are assumed to be true, but legal

conclusions are not. *Id.* at 679. The inquiry is not "whether a plaintiff will ultimately prevail" but instead only "whether the plaintiff is entitled to offer evidence to support his or her claims." *Grier v. Klem*, 591 F.3d 672, 676 (3d Cir. 2010).

Fraud claims must also satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. That rule requires a complaint alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "This has been interpreted to require that plaintiffs state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged and plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Alpizar–Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018) (cleaned up) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). However, knowledge and intent "may be alleged generally." Fed. R. Civ. P. 9(b).

## II.    DISCUSSION

The Court's report and recommendation was announced from the bench on November 29, 2022, as follows:

> I'm ready to give you my report and recommendation on the pending partial motion to dismiss. I will summarize the reasons for my recommendation in a moment. But before I do, I want to be clear that my failure to address a particular argument or case cited by a party does not mean that I did not consider it. We have carefully considered everything. I am not going to read my understanding of the applicable law into the record today; however, we will incorporate a transcript of my report and recommendation into a separate, written document, and we will include a summary of the applicable law in that document.
>
> This dispute arises out of the sale of Dynalabs, LLC ("Dynalabs" or the "Company") to Plaintiff Infinity Lab Group Inc. as set forth in a Membership Interest Purchase Agreement ("MIPA") dated July 17, 2020. The Complaint names as defendants Russell Odegard and Michael Pruett, who were co-CEOs of Dynalabs and

were its majority owners before the sale. The MIPA designated Defendants as the "Seller Representatives." (D.I. 1 ¶¶ 1, 2, 7, Ex. 1 § 8.1.)

Plaintiff's Complaint has two counts. Count I alleges breach of contract. Count II alleges fraud. Defendants want the Court to dismiss the fraud count. For purposes of ruling on this motion to dismiss, the Court may consider the complaint, exhibits attached to the complaint, and documents integral to or explicitly relied on in the complaint.[1] The Court must accept well-pleaded factual allegations as true and view those facts in the light most favorable to Plaintiff.

Dynalabs is "in the business of performing microbiological analysis and chemical and physical testing in the pharmaceutical sector and performing on-site drug identification and potency testing through the use of its proprietary 'DVx' technology." (D.I. 1 ¶ 11.) Pursuant to the MIPA, [Plaintiff] agreed to purchase the membership interests in the Company for $10 million subject to various adjustments. (*Id.* ¶ 11.) The parties understood that the purchase price was calculated based upon a 10x multiple of the Company's adjusted Earnings Before Interest, Taxes, Depreciation, and Amortization ("EBITDA"). (*Id.*)

Plaintiff alleges that it decided to engage in the transaction in reliance upon several express representations and warranties in the MIPA. (*Id.*) Article 4 of the MIPA contains the representations and warranties of the Company. In Section 4.4(a), the Company represented and warranted that "[t]he Financial Statements are complete and correct in all material respects and have been . . . prepared in accordance with the Accounting Principles and fairly present, in all material respects, the financial position, results of the operations and cash flows of the Company at their respective dates . . . ." (*Id.* ¶ 12, Ex. 1 § 4.4(a).) In Section 4.4(d), the Company represented that "[a]ll accounts receivable of the Business . . . are properly reflected in the books and records of the Company and on the Balance Sheet in accordance with the Accounting Principles, consistently applied . . . ." (*Id.* ¶ 13, Ex. 1 § 4.4(d).) Exhibit B of the MIPA sets forth the "Accounting Principles." (*Id.* ¶ 14, Ex. 1 at Ex. B.) The Accounting Principles generally state that the company recognizes revenue over time as services are provided in an amount that reflects the consideration the company expects to be entitled to for the services. The Accounting Principles state that the Company adopted Financial Account Standards Board ("FASB") Accounting

---

[1] *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Standards Update ("ASU") No. 2014–09, "Revenue from Contracts with Customers (Topic 606)," which requires companies to establish and maintain an unearned revenue reserve to account for such payments, and allows companies to gradually book revenue over time and decrease the unearned revenue account accordingly as services are provided to customers. The Accounting Principles further assert that the Company analyzed Topic 606 and concluded that no changes were necessary to conform with Topic 606's standard. (*Id.*)

The MIPA also contains detailed indemnification provisions. Section 7.2 generally provides (in pertinent part) that the Sellers shall indemnify, defend, and hold harmless the Buyer against and in respect of any losses arising or resulting from (i) the breach or nonfulfillment of any agreement or covenant of the Company, and (ii) any breach of or inaccuracy in any representation or warranty made by the Company. (*Id.* ¶ 16, Ex. 1 § 7.2(a)(i),(ii).) Sections 7.1 and 7.6 provide that, notwithstanding other limitations and restrictions in the MIPA, nothing in the agreement limits or restricts the Buyer's remedies with respect to fraud claims. (*Id.* ¶¶ 15, 18, Ex. 1 §§ 7.1, 7.6(a).)

Following the closing, Plaintiff discovered that the Company's revenue recognition and unearned revenue reserve accounting practices were not in accordance with Topic 606, belying its contrary representations in the MIPA. (*Id.* ¶ 19.) According to the Complaint, the FDA audited the Company in September 2019 and found that a number of its testing methods were unacceptable. (*Id.* ¶ 20.) As a result, the Company experienced a surge in demand for revalidation testing for many of its customers. (*Id.*) The Company invoiced the customers for whom it had quoted pricing for revalidation testing. (*Id.*) However, as of March 31, 2020, due to a lack of capacity resulting from the unexpected demand, the Company had not begun the revalidation testing in any material respect. (*Id.*)

Because the Company received payment for revalidation testing services that it had not yet begun, Topic 606 required it to account for the payments in an unearned revenue account, instead of booking the entire amount to revenue upon receipt of payment. (*Id.* ¶ 21.) The Company, however, recognized revenue immediately upon invoicing customers for revalidation testing, which had the effect of improperly inflating the Company's EBITDA. (*Id.* ¶ 22.) Dynalabs' then-CFO Steve Crouse knew that the Company was failing to properly account for unearned revenue, thereby boosting current revenue, as evidenced by the fact that the

4

Company properly applied Topic 606 to other aspects of the Company's business.  (*Id.* ¶ 22.)

Because the Company booked revalidation service payments immediately as revenue instead of accounting for the payments in its unearned revenue reserve, its revenue and thus its EBITDA were artificially inflated by $419,368 as of March 30, 2020.  (*Id.* ¶ 23.) Plaintiff alleges that "the Company and Defendants were . . . aware that [Plaintiff's] valuation of Dynalabs and the Purchase Price were based upon a 10x multiple applied to Dynalabs' adjusted EBITDA" and that Plaintiff relied on the MIPA's representations and warranties regarding the Company's accounting practices when it agreed to purchase the Company for $10 million.  (*Id.* ¶¶ 11, 24.)

On May 5, 2022, Plaintiff filed this lawsuit against Defendants "in their capacity as 'Seller Representatives'" under the MIPA.  (D.I. 1 at 1.)  As mentioned, Defendants seek dismissal of the fraud count.

Under Delaware Law,[2] the elements of fraud are (1) a false representation, usually one of fact, (2) the defendant's knowledge or belief that the representation was false, or made with reckless indifference to the truth, (3) an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation, and (5) damage to the plaintiff as a result of such reliance.[3]  Federal Rule of Civil Procedure 9(b) requires a plaintiff alleging fraud to state with particularity the circumstances constituting fraud.

I agree with Plaintiff that the Complaint adequately alleges fraud in connection with the Company's warranties and representations in the MIPA.  In particular, Plaintiff alleges that the Company, acting through its representatives Defendants Odegard and Pruett, falsely represented in Sections 4.4(a) and (d) of the MIPA that the company's financial statements were correct in all material respects and were prepared in accordance with the Accounting Principles, including Topic 606.  Plaintiff alleges that it relied on those allegedly false representations in the MIPA when it agreed to the deal and that it was damaged because it purchased the Company at an inflated price.

---

[2] MIPA Section 9.8 provides that "[t]he validity, interpretation and effect of the [MIPA] shall be governed by, and construed in accordance with, the Laws of the State of Delaware applicable to contracts to be carried out wholly within such State."  (D.I. 1, Ex. 1 § 9.8.)

[3] *Gaffin v. Teledyne, Inc.*, 611 A.2d 467, 472 (Del. 1992).

Indeed, Defendants' reply brief does not dispute that the Complaint adequately sets for the who, what, when, where, and how of an alleged fraud in connection with the identified representations in the MIPA.  Instead, Defendants contend that the Complaint does not adequately plead that the Company had knowledge that the MIPA representations and warranties were false and the Company intended to induce Plaintiff to act.

I disagree.  For starters, I don't think it's too much of an exaggeration to say that the whole point of a representations and warranties section in a contract is to induce the other party to the contract to enter into the contract.[4]

And as for the Company's knowledge that the MIPA statements were false, Rule 9(b) permits "knowledge" to be "alleged generally."[5]  Thus, to survive a motion to dismiss, the complaint only needs to allege that the entity accused of fraud knew the statement was false and the complaint needs to include enough factual allegations to make such knowledge plausible.

Plaintiff's Complaint complies with Rule 9(b).  The Complaint alleges that the FDA invalidated the Company's testing methods, resulting in a surge of revalidation testing, and that the Company's CFO knew that it had failed to adequately reserve the unearned revenue account for that testing, as evidenced by the fact that the Company accurately maintained the unearned revenue accounts for services other than revalidation testing.  The Complaint further alleges that the Defendants were "key executives at the Company" and were "well aware" of the fact that the Company was booking revenue immediately instead of gradually over time.  (D.I. 1 ¶ 2.)  It's not implausible to think that high-level Company executives would know about an adverse FDA action and the resulting surge in demand for revalidation testing, and that they would discuss the resulting impact on the Company's financials with other high-level executives including the CFO—especially since the facts alleged in the Complaint suggest that the revalidation

---

[4] *See Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015) ("When a party sues based on [] written representation[s] in a contract, . . . [i]t is reasonably inferable that the defendants intended to induce reliance on the representations because they appeared in a written agreement.").

[5] Fed. R. Civ. P. 9(b); *see also Mech. Contractors Ass'n of Am., Inc. v. Hilton Franchise Holding, LLC*, No. 20-759-SB, 2020 WL 7481771, at *1 (D. Del. Dec. 18, 2020) ("[Plaintiff] must plead this fraud claim 'with particularity,' though it can allege knowledge and intent 'generally.'").

invoicing made up a huge chunk of the Company's revenue during a relevant time period.

The Complaint also alleges that Defendants knew that the Company's purchase price would be calculated based in part on its revenue and that Defendants were the majority owners and thus stood to gain from the sale. (*See, e.g., id.* ¶¶ 2, 11, 24, Ex. 1.) Those factual allegations, considered in combination with Defendants' clear interest in obtaining the highest possible price for the Company, make it plausible that the CFO, Defendants, and the Company knew that the Company was inappropriately accounting for its revenue in contradiction to the representations and warranties made by the Company in the MIPA.

In their reply brief, Defendants contend that Plaintiff's Delaware common law fraud claim must comply with the "strong inference" standard [for pleading scienter] applicable to securities litigation under the Private Securities Litigation Reform Act.[6] Defendants are incorrect. Even if the argument were not waived, I reject it. Defendants have cited no case in which the Third Circuit (or even any court in this district) has applied the PSLRA pleading requirements to a state law common law fraud claim. The PSLRA, by its terms, applies to federal securities fraud suits.[7]

Defendants also suggest in their briefs, and suggested during the hearing today, that the Company could not have committed fraud because its application of Topic 606 was reasonable. I understand that argument. However, we are at the motion to dismiss stage, and on this record the Court is not prepared say as a matter of law that what the Company was doing was reasonable. Defendants' counsel suggested today that they will have an expert to support the Company's accounting treatment, and Defendants are, of course, free to defend the Company's accounting at the summary judgment stage.

As Defendants do not make any other arguments supporting dismissal of the fraud claim, I recommend that the Court deny Defendants' motion to dismiss that claim.

---

[6] *See, e.g.*, 15 U.S.C. § 78u–4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 320–21 (2007).

[7] *See* 15 U.S.C. § 78u–4(a) ("The provisions of this subsection shall apply in each private action arising under this chapter [2B of Title 15] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.").

### III.     CONCLUSION

For the reasons set forth above, I recommend that Defendants' partial motion to dismiss (D.I. 8) be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), (C), Federal Rule of Civil Procedure 72(b)(1), and District of Delaware Local Rule 72.1.  Any objections to the Report and Recommendation shall be filed within fourteen days and limited to ten pages.  Any response shall be filed within fourteen days thereafter and limited to ten pages.  The failure of a party to object to legal conclusions may result in the loss of the right to *de novo* review in the district court.

The parties are directed to the Court's "Standing Order for Objections Filed Under Fed. R. Civ. P. 72," dated March 7, 2022, a copy of which can be found on the Court's website.

Dated: December 28, 2022

_____
The Honorable Jennifer L. Hall
UNITED STATES MAGISTRATE JUDGE